Argued November 30, affirmed December 15, 1914.

## BAKER *v.* UGLOW.

(144 Pac. 758.)

**Trusts—Evidence to Establish—Parol Agreement.**

1. Evidence of the conveyance of land to testator by his wife having been on any parol agreement that he should will it to plaintiffs, *held*, not sufficiently specific and definite to establish a trust, even if there was anything to take it out of the statute of frauds.

[As to creation of trust in land by parol, see note in 115 Am. St. Rep. 774.]

From Polk: WEBSTER HOLMES, Judge.

This is a suit by Mary E. Baker and Sarah Agnes Stout against John C. Uglow and Dan P. Stouffer, as executors of the last will and testament of John S. Martin, deceased, Catherine E. Martin, Henry Lee Fletcher, Nellie Fletcher, Viola Volheim, Henry Volheim, Faye Uglow and John C. Uglow, respondents, and Albert De Lashmutt and Ray L. De Lashmutt, defendants. There was a decree for the defendants and plaintiffs appeal.

The facts are set forth in the opinion of the court.
AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. George G. Bingham.*

For respondents there was a brief over the names of *Mr. Oscar Hayter* and *Messrs. McCain, Vinton & Burdett,* with oral arguments by *Mr. W. T. Vinton* and *Mr. Hayter.*

Department 2.   MR. JUSTICE EAKIN delivered the opinion of the court.

John S. Martin died testate in Polk County, Oregon, on the 20th day of April, 1912.   His wife, Maria A. Martin, died the 19th of February, 1907.   In their lifetime they each had considerable property, and left surviving them two children, Sarah Agnes Stout and Mary E. Baker, and certain grandchildren, Faye Uglow and Viola Volheim, daughters of their son, Andrew N. Martin, deceased, and Henry Lee Fletcher, son of Edith E. Fletcher, a daughter, and children of their daughter, Susan E. De Lashmutt, namely, R. De Lashmutt, John C. De Lashmutt, Edith F. De Lashmutt, Victor C. De Lashmutt, Mildred Z. De Lashmutt, Ray L. De Lashmutt and A. De Lashmutt.   John S. Martin made his last will on January 21, 1911, as follows:

"I, John S. Martin, of Dallas, Polk County, State of Oregon, formerly a resident of McMinnville, Yamhill County, State of Oregon, of the age of 80 years, do hereby make, publish and declare this my last will and testament, in manner and form following:

"Article I.   I will and direct that my just debts, if any, and my funeral expenses, including the cost of the erection or completion of a suitable monument at my grave, and the expense of administering my estate, shall be paid out of the personal property which I may own at my death, or if the same be not sufficient, then out of the rents, issues or profits or the proceeds of sale, of my real property.

"Art. II.   I bequeath to my wife, Catherine E. Martin, all articles of personal, domestic or household use or ornament, including my furniture, books, pictures,

musical instruments, provisions, consumable stores, and all household effects which at the time of my death shall be in, about, or belonging to the house in which I may reside at my decease.

"Art. III.   I devise my real property in the City of Dallas, in Polk County, State of Oregon, including my dwelling-house where I now live, the garden, and the lands appurtenant and used by me in connection therewith, situated at the east end of Court Street and being all of the real estate owned by me in the said City of Dallas, to the use of my said wife, during her life; and from and after her decease, I devise the said premises to my daughters Susan Ellen De Lashmutt and Mary E. Baker, my grandson Henry Lee Fletcher, and my granddaughters Faye Uglow and Viola Volheim, their heirs and assigns, forever, as tenants in common, in the shares and proportions following: To said Susan Ellen De Lashmutt, Mary E. Baker and Henry Lee Fletcher each an undivided one fourth (¼) part or portion thereof, and to said Faye Uglow and Viola Volheim each an undivided one eighth (⅛) part or portion thereof.   I direct that my said wife shall, during her life, at her own expense, pay and discharge all taxes and assessments which may be assessed or levied upon or against the said premises, when and as soon as the same become due and payable, and before the same become delinquent.

"Art. IV.   It is my especial desire that my said wife shall receive the sum of forty ($40.00) dollars per month, payable to her quarterly, from the date of my death, as long as she lives and remains unmarried, in order that she may have a comfortable living during her life or widowhood.   I therefore bequeath to my said wife, for and during her life, or so long as she remains unmarried, an annuity of four hundred and eighty ($480.00) dollars, to commence at my decease, four fifths (4/5) thereof to be charged upon my lands and hereditaments hereinafter in and by articles V, VI, VII and VIII of this my will devised to my daughters, Susan Ellen De Lashmutt, Mary E. Baker and Sarah Agnes Stout, and to my grandson Henry

Lee Fletcher, and one fifth (1/5) thereof to the fund hereinafter in and by article XI of this my will bequeathed to John C. Uglow in trust, and to be payable by four equal quarterly payments, the first payment being due at the end of three months next after my decease, and thereafter payments thereof shall be made at the end of each succeeding period of three months for and during the life or widowhood of my said wife. One fifth (⅕) of said annuity, amounting to twenty-four ($24.00) dollars per quarter-year, is hereby charged upon the real property hereinafter devised to said Susan Ellen De Lashmutt; one fifth to the lands devised to Mary E. Baker; one fifth to the lands devised to Sarah Agnes Stout; one fifth to the lands devised to Henry Lee Fletcher; and one fifth to the fund bequeathed to John C. Uglow in trust. It is my will and I do direct that said devisees last above named shall have possession of the lands hereinafter devised to them, respectively, subject to the charge upon the same as herein imposed, from the time of my decease, and that said devisees shall each pay his or her proportion of said annuity to my said wife in time, amount and manner as above set forth; but in case any of said devisees shall fail, neglect or refuse to pay the part or share of said annuity so charged upon the lands devised to him or her, then it is my will and I do direct that the executor of this will, or the administrator of my estate, with the will annexed, shall take possession of the lands of the person or persons so in default and manage and control the same, and collect the rents, issues and profits therefrom, and out of such rents, issues and profits pay to my said wife the share of said annuity due from said lands, as hereby charged thereon and also pay any and all taxes accruing upon said lands and the expenses of maintaining the fences, buildings and improvements thereon, together with all reasonable sums for the executor's or administrator's services and expenses in securing possession of said lands and leasing out the same and discharging the duties hereby imposed upon him, and that the overplus, if any, shall be paid over, annually, to the

devisee, or his or her heirs or assigns, so in default; and, if necessary said executor or administrator shall sell the land upon which such share of said annuity is charged, for the purpose of raising such share which may be overdue. To the end that said annuity shall be paid in preference to all other devises and bequests, I hereby authorize and empower the executor of this my will, or the administrator of my estate, with the will annexed, to do any act or thing whatsoever, necessary or requisite in the premises, to insure the payment thereof.

"Art. V. I give and devise to my daughter Susan Ellen De Lashmutt the farm upon which she and her husband have recently lived, and which is now under their control, situated about five miles southwesterly from the City of McMinnville, in Yamhill County, State of Oregon, containing one hundred (100) acres, more or less; but I will and direct that Butler De Lashmutt, husband of said Susan Ellen De Lashmutt, shall have one half (½) of the proceeds of the said farm during the time he shall remain her husband. This devise is subject to article IV of this will, and said land is expressly charged with the payment of one fifth (⅕) of the annuity hereinbefore bequeathed to my said wife, in preference to all other claims and charges whatsoever.

"Art. VI. I give and devise to my daughter Mary E. Baker the south one half (½) of what remains unsold of the Donation Land Claim of John S. Martin and wife, near Ballston, in Polk County, State of Oregon. This devise is subject to article IV of this will, and said land is expressly charged with the payment of one fifth (⅕) of the annuity hereinbefore bequeathed to my said wife.

"Art. VII. I give and devise to my daughter Sarah Agnes Stout the north one half (½) of what remains unsold of the above-named Donation Land Claim of John S. Martin and wife, near Ballston, in Polk County, State of Oregon, together with my undivided one-half interest in and to the premises known as the Fuqua Mill property, comprising about one hundred

and twenty (120) acres of land on Baker Creek, in Yamhill County, State of Oregon. This devise is subject to article IV of this will, and said land and all thereof is expressly charged with the payment of one fifth (⅕) of the annuity hereinbefore bequeathed to my said wife.

"Art. VIII. I give and devise to my grandson Henry Lee Fletcher one hundred (100) acres off the east side of the farm known as the Fletcher farm, the same being situated about one and one-half miles east from the City of McMinnville, in Yamhill County, State of Oregon, on what is known as the Dayton road; the said one hundred (100) acres of land to be cut off of said farm by a line running due north and south. This devise is subject to article IV of this will, and said land is expressly charged with the payment of one fifth (⅕) of the annuity hereinbefore bequeathed to my said wife.

"Art. IX. I bequeath to my granddaughter Faye Uglow the sum of fifteen hundred ($1,500.00) dollars.

"Art. X. I bequeath to my granddaughter Viola Volheim the sum of fifteen hundred ($1,500.00) dollars.

"Art. XI. I give and bequeath to John C. Uglow, of Dallas, Oregon, the sum of three thousand ($3,000.00) dollars upon trust that he shall invest the same in his name in any mode proper for a trust, with power from time to time to vary such investments, and my trustee shall stand possessed of such investments and the income thereof upon trust to pay out of such income one fifth (⅕) of the annuity hereinbefore bequeathed to my said wife, at the times and in the amounts hereinbefore in article IV particularly specified, viz., twenty-four ($24.00) dollars per quarter-year; and I direct that in case at any time the said income shall be insufficient to pay the said one fifth (⅕) part of said annuity my trustee shall resort to the principal of said trust fund for the payment thereof. And I direct that upon the death or remarriage of my said wife my trustee shall pay over and deliver to said Faye Uglow and said Viola Volheim, share and share alike, such part of the said trust fund of three thou-

sand ($3,000.00) dollars and the income thereon as may then remain in his hands.

"Art. XII. I authorize, empower and direct my executor hereinafter named, or the administrator of my estate, with the will annexed, to sell the remainder of the said farm known as the Fletcher farm, which contains about one hundred and fifty (150) acres in all (one hundred acres off the east side thereof having been devised to Henry Lee Fletcher by article VIII of this will) at public or private sale, with or without notice, and without an order of the court therefor, at any time said executor or such administrator may deem it advisable, and to execute and deliver all deeds, instruments of transfer, and other writings necessary to pass a proper title thereto. The proceeds of such sale, or such part thereof as may remain after the payment of funeral charges, debts, and expenses of administration of my estate and the bequests made in articles IX, X and XI of this will, shall be devised in the manner provided in the succeeding articles of this will.

"Art. XIII. All the rest, residue and remainder of my estate, personal and mixed, not hereinbefore disposed of, including the proceeds of sale of the land directed by article XII of this will to be sold, or whatever part of such proceeds as may remain, I give, devise and bequeath as follows: One fourth (¼) thereof to said Mary E. Baker; one fourth (¼) thereof to the heirs at law of my deceased son, Andrew N. Martin; one fourth (¼) thereof to said Henry Lee Fletcher; and one fourth (¼) thereof to said Susan Ellen De Lashmutt. * * *"

It is contended by the plaintiffs that Maria A. Martin had planned to leave the property sued for to the plaintiffs, and for convenience had deeded all her real property to John S. Martin in trust, with the parol understanding that he would leave by will the property sued for to the plaintiffs. It is alleged that he made a will to that effect about March, 1906, but that thereafter he changed it, reducing the amount of the be-

quest. It is contended by defendants that the agreement, if made, is not definitely proved, nor is it in writing, and therefore proof of it is barred by the statute of frauds. Plaintiffs seem to treat the alleged agreement relating to the property mentioned in the complaint as established by mere inference and conclusion of the witnesses only. Part of the mother's property was her half of the United States donation land claim of John S. Martin and wife. The remainder was largely the accumulations and results of the life work of the husband and wife, and, as they advanced in years, they were planning to make final distribution of their accumulations among their children. Their lives and labors had evidently been harmonious, working to the lasting success of their joint efforts, and their conversations, as testified to, and their intentions, as evidenced by their acts, were looking to the distribution of their property, joint as well as individual, among their children or their descendants, equally by right of representation. The evidence does not show that the mother was anxious to apportion her property to favorites of her children to the exclusion of others. John S. Martin and his wife, on May 13, 1885, show their joint purpose by wills executed on that date, which seek to distribute their individual property equally to the children. The fourth item of the will of Maria A. Martin provides as follows:

"I give, devise and bequeath to my daughter Sarah A. Stout, subject to said life estate in my said husband, the following portion of my real estate, to wit: All my right, title and interest in and to the tract of land conveyed to myself and my husband, John S. Martin, by Geo. W. Graves and wife and D. P. Stouffer, on the 13th day of February, A. D. 1880, by deed of that date, which deed is recorded at page 122 of Book No. 13 of the records of deeds for Polk County, Ore-

gon, and being a part of the said Daniel C. Rowell's donation land claim in the County of Polk, State of Oregon.''

The fourth item of the will of John S. Martin, executed the same date, provides as follows:

''I give and devise to my daughter Sarah A. Stout, subject to the life estate of my said wife, all my right, title and interest in and to the following described real property: The 70-acre tract of land conveyed to me by James McCain, Sr., and wife, on the 22d day of October, A. D. 1867, by deed of that date, which is recorded at p. 595, of vol. 9, of the records of deeds of Polk County, Oregon, and being a part of the Daniel C. Rowell donation land claim in said county and state; also all my interest in the tract of land conveyed to John S. Martin and Maria A. Martin, his wife, by George W. Graves and wife and D. P. Stouffer, on the 13th day of February, A. D. 1880, by deed of that date, which deed is recorded at page 122 of Book 13 of the records of deeds of Polk County, Oregon, and being a part of the D. C. Rowell donation land claim in said county and state. I also give and bequeath to my said daughter, Sarah A. Stout, $600 in money, subject to the said life estate of my wife. This $600 in money is given to my daughter in order to make her share of my estate equal to that of the individual shares of my other children.''·

Thus it appears that they were both aiming to make an equal distribution of their estates. Subsequent wills were executed by both; and about January 23, 1906, with the mutual understanding, as shown by the testimony, that the distribution of the property could be more equally made if it were all in the name of one, the mother conveyed all her real estate to the father; such understanding being presented to us only by the testimony of interested witnesses. Stout testifies that she said the former will did not fit the property

now. The deed is a plain warranty deed without condition, except that it retains to the wife the rents and profits of the land while she lives. Soon thereafter, about March, 1906, John S. Martin made a will in which he made an effort to treat all his children impartially. We find this will only as a copy of the stenographer's notes made of it at the time. In that he wills to plaintiff Mary E. Baker, after the death of his wife, the south half of the remaining unsold part of the donation land claim of J. S. Martin and wife; no mention being made of the 27-acre adjoining tract. This is the south half of the north half of the donation land claim. He willed her also $1,000 out of the proceeds of any personal property or money remaining after the death of his wife. To Sarah A. Stout he devised and bequeathed the north half of the said part of the donation land claim remaining unsold and $1,000 out of the proceeds of any personal property or money remaining after the death of his wife. D. Stout, a witness for plaintiffs, says that plaintiff Sarah A. Stout is his wife. He testifies to the fact that John S. Martin received property from Mrs. Martin, and says:

"I know Mrs. Martin frequently got money. She owned farms. She told me she rented them, and got the rent. * * She had those farms rented for about 23 years, * * and the income from the places she told me, was hers. That at the time the deed was made to John S. Martin—I could not give the date—she told me she had $5,000 in money and accounts, and she had been letting Mr. Martin have money. * * Mr. Martin gave me to understand that they had fixed the papers just as she wanted them, and the property was deeded to him. * * Q. Did you know about Mrs. Martin making a will about eight or nine years prior to her death? A. They made a will. She told me they had, and Mr. Martin told me they had; that there was a will made. * * Quite a long time before the deed was made, they

were talking the matter over, they were thinking of changing the will and were going to dispose of their property.

"That the reason the deed was made to Martin was because they wanted to distribute all their property, and that they could dispose of it better by its being in one name than each one dividing it separately."

This testimony is very unsatisfactory, and is largely the opinion of the witness, and is not sufficient upon which to decree a trust, and as to money owned by Maria Martin or coming to the hands of John S. Martin is indefinite and unreliable. Mrs. Martin made a will on July 14, 1898, in which she gives each one of the children $5, and all the rest of her real estate to her husband unconditionally. She said that it was always their purpose to dispose of their property— not particularly hers. There is no evidence tracing her money into the hands of John S. Martin, or any contract or agreement in relation thereto. On this trial plaintiffs seem to take the will of John S. Martin, of date March, 1906, as evidence of a partial execution of a parol agreement to create a trust in regard to the estate and as evidence of it, but that will only disposes of the homestead and $2,000 of his money to Mary E. Baker and Sarah Agnes Stout, the plaintiffs, and no reference is made to any agreement. Before John S. Martin made his last will, the situation was greatly changed, caused by his marriage to a second wife, and in his last will he attempted to make provision for his wife in case she survived him. If he had not done so, the statute gives to the wife half of the real estate and half of the personal property of which he dies seised, and he seems to have had knowledge of this dower right. The proof tends to show that the

widow has already relinquished her right under the
will, and is now seeking to recover her dower.  Plain-
tiffs' recovery of the property sued for in this case
would take largely from the other heirs and reduce
their part to an amount much less than plaintiffs', and
make the distribution of the property of Martin and
wife to the children very unequal, which was at no time
the intention of the mother, as indicated by the con-
versations and conduct of the children.  Mrs. Stout, in
addition to the half of the donation land claim given
her by the terms of the present will of John S. Martin,
gets also the undivided half of the Hamilton place
referred to as the Fuqua Mill, alleged to be worth
about $600, and Mrs. Baker is given one fourth of the
proceeds of the sale of about 50 acres of the Fletcher
farm, of the dwelling in Dallas, worth about $1,600,
and of the rest and residue of the estate, real, personal
and mixed.  The appraisement of the estate  shows
that there is personal property to the value of $8,695,
of which $2,695 is included in the disposition of Article
XIII of the said will of John S. Martin; also, the 27-acre
tract for which plaintiffs contend is included in that
item.  There is no proof of a part performance of the
parol agreement to create a trust sufficient to take
the case out of the statute of frauds; neither does the
evidence of the alleged part  performance show that
such acts were in fulfillment of a parol agreement.
The evidence fails to show that the property or any of
it was obtained by John S. Martin by fraud.  The
evidence of the agreement is not sufficiently definite
and cannot operate to establish a trust.  Therefore we
conclude that it was not the intention of the mother to
control the distribution of part of her estate to plain-
tiffs to the exclusion of the other children except as a
part of an equal distribution of the property of both

of them, and that the facts testified to and other proof in regard to the trust are not sufficiently specific and definite to create a trust. Neither is the evidence of trust sufficient to take the case out of the statute of frauds.

The decree is affirmed.          AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.